Singleton, Judge:
This claim was filed with the Attorney General and the evidence of the claimant and respondent offered and the record made before the Claims Examiner for that office at hearings held on the 30th day of September, 1965, and October 15, 1965. No opinion was rendered herein by the Attorney General and the entire record and case file was delivered to this Court after July 1, 1967 for consideration and decision.
It appears from the record that one E. O. Clower was awarded a contract by the State Road Commission on June 28, 1960 for the construction of approximately seven miles of gravel surfaced access road from Neola to Sherwood Lake in Green-brier County, designated as Project No. F H 10-A, to be completed in 200 working days for the sum of $319,803.00. Subsequent change orders and engineering cost reimbursement to the State Road Commission resulted in the reduction of this figure to $304,582.41. The project was contracted for under the State Road Commission Standard Specifications, 1952. E. O. Clower, because of financial difficulties, defaulted under this contract after completing work thereunder valued at $140,856.51 by the State Road Commission. Clower’s surety on his performance bond, The Buckeye Union Casualty Company, by contract dated August 31, 1961, engaged Melvin O’Brien to complete the contract. O’Brien thereafter worked during the remainder of the construction season of 1961, the construction season of 1962 and the project was finally completed in Novem *18 ber of 1963, although the final estimate and payment on the contract was not made until August 16, 1965. By instrument dated September 27, 1966, Buckeye Union assigned any and all of its interest in this claim to Melvin O’Brien, said instrument having been filed with the Attorney General and included in the file of this proceeding.
This claim is in the amount of $79,200.00 for extra work required of the contractor caused by State Road Commission grade errors; additional compensation over the unit price for a gravel over-run in excess of 40% (11,999.96 cubic yards); compensation for expenses incurred due to unwarranted delay in completion of the project caused by the State Road Commission changes in allowable tolerances in final grades, changes in methods of ascertaining grade, refusal of State Road Commission to permit contractor to do work on project during winter of 1962 that could have been done, and harrassment due to an excessive number of State Road Commission inspectors; expenses incurred in constantly re-grading previously finished work caused by State Road Commission’s insistence that the road be constantly open to traffic; and under drain placement expense over and above the contract.
Testimony was offered by claimant O’Brien and his position substantiated generally by his two superintendents on this project. Respondent’s chief witnesses were the project engineer, Mr. Pennell and the Assistant District Engineer, Mr. Shaluta. Various exhibits were offered to substantiate the losses sustained by claimant and the contract and specifications were made a part of the record by respondent. While there was some conflict as to the length of roadway removed and then required to be replaced by contractor due to a mistake in grade, there is no conflict in the evidence as to the fact that this mistake was on the part of the State Road Commission. The testimony of the State Road Project Engineer indicates that he felt that the contractor should be paid for this extra work and that it was an oversight on his part that no item was included in the final estimate for this project to cover this expense. (Record— Page 268 — Pennell). The big item of damages claimed by the contractor is the $5.80 per cubic yard demanded for the gravel over-run of approximately 40% above the original contract estimate. (11,999.96 cubic yards). The emit price for an over-run *19 of this percentage is subject to negotiation under the standard specifications covering this project. The unit price called for in the contract was $1.90 per cubic yard, and the State Road Commission paid the contractor for the over-run at this unit price on the ground that he had failed in preliminary negotiations to substantiate any higher costs. While the Court is of the opinion that the contractor did not establish by a preponderance of the evidence that he had sufficient additional costs to warrant payment of the sum of $5.80 per cubic yard for this extra gravel, the Court is of the opinion that the evidence adduced on behalf of the claimant is more than sufficient to substantiate the additional sum of $1.50 per cubic yard. The evidence further discloses this project far exceeded the original estimate of 200 working days for completion. There is evidence to substantiate contractor’s contention that he de- ■ sired to continue some work in 1962 that could have been done despite weather conditions but he was prohibited by the State Road Commission. It is further uncontradicted that the tolerances permitted the contractor in his subgrade and top dressing grade were changed during the course of this contract from a tenth of a foot tolerance in 1962 to a half inch tolerance in 1963, and that the methods of checking these grades and tolerances were also changed from time to time. While it further appears that these changes in procedure were within the authority of the State Road Commission, it is also clear that they could not have been reasonably contemplated by the contractor in his undertaking of this contract, particularly the regrading of the approximately seven miles of roadbed at the completion of the project to conform to the newly established tolerance scale, and the Court is of the opinion that the evidence warrants some additional compensation to the claimant by reason of these changes, delays and extra work.
It is the opinion of the Court that the claimant would have been entitled to some additional compensation as a result of this contract and his performance thereof had this dispute arisen between two private individuals. The claimant did perform his contract, and in the words of Mr. Shaluta, respondent’s witness, “whether he was going bankrupt or not, he did do the job and he did it in a proper manner.” (Direct examination, Record, Page 288).
*20 After consideration of the record, the evidence and exhibits offered on behalf of the claimant, the evidence and exhibits offered on behalf of the respondent, and the arguments in the record made by counsel for both claimant and respondent, the Court is of the opinion that the claimant has proven a valid claim against the State Road Commission of West Virginia which the State as a sovereign commonwealth should in equity and good conscience discharge and pay; and it is therefore our judgment that the claimant should recover the sum of $12,000.00 for the extra work and losses sustained in the removal and subsequent replacement of considerable length of roadbed due to a grading error on the part of the State Road Commission, additional compensation for the over-run in gravel in the amount of $18,000.00, and additional compensation for extra work and additional costs incurred due to delays occasioned by procedural changes through no fault of the claimant in the amount of $9,775.00, and a total award is hereby made to said claimant in the amount of $39,775.00.